1  Stanton L. Stein (SBN 45997)
   lstein@raklaw.com
2  Bennett A. Bigman (SBN 115426)
   bbigman@raklaw.com
3  Erica S. Kim (SBN 313261)
   ekim@raklaw.com
4  RUSS, AUGUST & KABAT
   12424 Wilshire Boulevard, 12th Floor
5  Los Angeles, California 90025
   Telephone: (310) 826-7474
6  Facsimile:  (310) 826-6991

7
8  Attorneys for PLAINTIFF,
   Bruce Sudano, in his capacity as Executor
   of the Estate of Donna Summer Sudano d/b/a
9  Sweet Summer Night Music

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA –WESTERN DIVISION

| | |
|---|---|
| BRUCE SUDANO, in his capacity as Executor of the ESTATE OF DONNA SUMMER SUDANO D/B/A SWEET SUMMER NIGHT MUSIC,<br><br>Plaintiff,<br><br>vs.<br><br>KANYE OMARI WEST a/k/a "YE," an individual; TYRONE WILLIAM GRIFFIN, JR. p/k/a "TY DOLLA $IGN," an individual; YEEZY RECORD LABEL, LLC, a California limited liability company; YZY SND, an unknown entity; DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-01586<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

RUSS, AUGUST & KABAT

1
COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Bruce Sudano, in his capacity as the Executor of the Estate of Donna Summer Sudano d/b/a Sweet Summer Night Music ("Plaintiff") hereby complains and alleges as follows:

## NATURE OF THE ACTION

1. This action concerns the blatant theft of legendary music artist Donna Summer's ("Summer") ground-breaking and iconic song, "I FEEL LOVE." By this action, Plaintiff seeks to protect Summer's musical legacy that made her the undisputed "Queen of Disco."

2. Defendants Kanye Omari West a/k/a "Ye" ("West"), Tyrone William Griffin, Jr. p/k/a Ty Dolla $ign requested permission from Summer's estate to sample, i.e., use parts of the song, "I FEEL LOVE," and permission was explicitly denied. Despite this denial, Defendants shamelessly used instantly recognizable portions of Summer's hit song, "I FEEL LOVE," on their recently released collaborative album, "Vultures 1," and in recorded live concerts.

3. It is well documented that, with its innovative use of repetitive synthesizer loops, unique pulses, and Summer's memorable vocals, "I FEEL LOVE" forever changed the world of dance music. Given the song's worldwide recognition and influence, "I FEEL LOVE" has immense value and commands a substantial licensing fee for its use in recordings, films, television, advertisements, and other commercial projects around the world. West and his Co-Defendants recognized this significant value and requested permission from Summer's estate for its use on their upcoming album.

4. Summer's estate, however, wanted no association with West's controversial history and specifically rejected West's proposed use of Summer's "I FEEL LOVE." In the face of this rejection, Defendants arrogantly and unilaterally decided they would simply steal "I FEEL LOVE" and use it without permission. In their song "GOOD (DON'T DIE)," Defendants re-recorded almost verbatim the key, memorable portions of Summer's iconic song, used it as the hook for their

1  own song, and released it to the public knowing they had tried and failed to secure
2  legal permission from its rightful owners and had no legal right to do so.
3  Defendants' actions constitute willful copyright infringement, and entitles
4  Summer's estate to recover compensatory damages, maximum statutory damages,
5  attorneys' fees, and disgorgement of any profits earned by West and his Co-
6  Defendants from their unauthorized use of one of Summer's and, indeed, one of
7  dance music's most influential and valuable songs.

8   5.  After "GOOD (DON'T DIE)" was released, music fans and critics instantly recognized the song as a blatant rip-off of "I FEEL LOVE." Many reputable music services took down the infringing song shortly after its release in acknowledgement of Plaintiff's intellectual property rights.

6.  This lawsuit is about more than Defendants' mere failure to pay the appropriate licensing fee for using another's musical property. It is also about the rights of artists to decide how their works are used and presented to the public, and the need to prevent anyone from simply stealing creative works when they cannot secure the right to use them legally. In this case, it is about protecting Donna Summer's own musical legacy and one of popular music's most influential and ground-breaking songs.

## THE PARTIES

7.  Plaintiff Bruce Sudano ("Sudano") is an individual and the Executor of the Estate of Donna Summer Sudano d/b/a Sweet Summer Night Music ("Summer Estate"), which co-owns the copyright in the musical composition "I FEEL LOVE," as registered with the United State Copyright Office. Sudano is a citizen of the State of California residing in the County of Los Angeles.

8.  Defendant Kanye Omari West a/k/a "Ye" ("West") is an individual and, based on information and belief, a citizen of the State of California residing in Los Angeles County, California. West is a writer and producer of the infringing song, "GOOD (DON'T DIE)."

3
COMPLAINT FOR COPYRIGHT INFRINGEMENT

9. Defendant Tyrone William Griffin Jr. p/k/a "Ty Dolla $ign" ("Ty Dolla $ign") is an individual and, based on information and belief, a citizen of the State of California residing in Los Angeles County, California. Ty Dolla $ign is a writer of the infringing song, "GOOD (DON'T DIE)."

10. Defendant Yeezy Record Label, LLC is a California limited liability company with its principal place of business in Los Angeles County. Based on information and belief, Yeezy Record Label, LLC is owned, in whole or in part, by West, and is the record label and distributor of the infringing song, "GOOD (DON'T DIE)."

11. Defendant YZY SND is, based on information and belief, a business entity, the legal form and status of which is currently unknown to Plaintiff. Based on information and belief, YZY SND is owned, in whole or in part, by West, that acts as the record label and distributor of the infringing song, "GOOD (DON'T DIE)."

12. Plaintiff is informed and believes, and thereon alleges, that other fictitious defendants, not previously identified by name but designated as Does 1 through 10, may be liable or responsible in whole or in part for the allegations contained herein. Once the true names and capacities of these Doe Defendants are ascertained, Plaintiff will seek leave to amend this Complaint and substitute their true names and capacities.

13. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants named herein as Does 1 through 10, inclusive, is intentionally, negligently, or otherwise legally responsible in some manner, either vicariously or by virtue of his, her, or its agents, representatives, or employees, for the acts and occurrences alleged herein, and has thereby proximately caused injury or damage to Plaintiff.

14. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, the Defendants, and each of them, were the agents, partners,

1  alter egos, joint venturers and/or employees of each other, and at all times, were
2  acting in the scope and course of said agency, partnership, joint venture, alter ego
3  relationship, and/or employment, with full knowledge and consent of each other. In
4  doing so, the Defendants, and each of them, acted within the scope of such
5  relationship or ratified the acts of the others, and is jointly and severally liable as
6  such. Plaintiff further believes that Defendants, and each of them, are the alter egos
7  of each other, and that there is such unity of interest and ownership between and
8  among Defendants, that such interest have become intertwined and inseparable.

## JURISDICTION AND VENUE

10  15.  The Court has federal question jurisdiction pursuant to 28 U.S.C.
11  Sections 1331, 1338(a), as a controversy arising under the Copyright Act and
12  Copyright Revision Act of 1976 (28 U.S.C. Section 101, *et seq.*), which is within
13  the exclusive jurisdiction of the federal courts.

14  16.  This Court has personal jurisdiction over the Defendants because,
15  based on information and belief, each has purposefully committed, within the State
16  of California, the acts from which Plaintiff's claim arises, knowing and intending
17  that such acts would cause injury to Plaintiff within the state. Furthermore,
18  Defendants have purposefully availed themselves of the benefits of conducting
19  business within the State of California by directing their activities with respect to
20  the infringing work, including their marketing and promotion of the infringing
21  work, to California residents, who are able to purchase, download, and stream the
22  infringing compositions and recordings.

23  17.  Upon information and belief, Defendants West and Ty Dolla $ign
24  have performed and/or will perform touring dates in California to further exploit
25  the infringing compositions and recordings, and have licensed, distributed, and
26  exploited the subject infringing song in this state.

27  18.  The Court also has general jurisdiction over Defendants, as each
28  either resides in this state, has incorporated in this state, has its principal place of

5
COMPLAINT FOR COPYRIGHT INFRINGEMENT

business in this state, and/or conducts continuous, systematic, and routine business within the State of California and the County of Los Angeles and/or within this district, including but not limited to writing, recording, performing, and distributing music and sound recordings in this state.

19. Consequently, by virtue of their pervasive business contacts and transactions within the State of California, Defendants are constructively aware and can reasonably expect and/or anticipate being sued in this jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. Sections 1391 and §1400(a), as Plaintiff and Defendants are subject to personal jurisdiction in this district, and have committed unlawful acts of copyright infringement in this district.

## FACTUAL BACKGROUND

### Donna Summer is a Legendary Music Artist Known as the "Queen of Disco"

21. Donna Summer ("Summer"), a gifted songwriter and performer, pioneered a disco and dance music revolution in the mid-1970's that swept the world. Summer started her career in Munich, performing in a German adaptation of the musical "Hair," and shortly thereafter, she met her musical soulmates, producer Giorgio Moroder ("Moroder") and composer Pete Bellotte ("Bellotte"), with whom she recorded her breakthrough disco hit "Love to Love You Baby." Summer returned to the United States in 1976 and from that point forward, recorded numerous other hit records, including "Hot Stuff," "Bad Girls," "Last Dance," "Dim All the Lights," "On the Radio," and, of course, "I FEEL LOVE."

22. Summer's celebrated career included five Grammy awards and a total of 32 chart singles on the U.S. Billboard Hot 100, including 14 top-ten singles and four number one singles. She claimed a top-forty hit every year between 1976 and 1984, and her 12 top-ten hits during that period were more than any other performer. Summer was the first recording artist to have three consecutive double albums reach the top of the U.S. Billboard 200 chart. In total, Summer is

responsible for over 100-million records sold, making her one of the best-selling and beloved musical artists of all time.

23. Summer, who passed away in 2012, was described in her obituary in the London Times as the "undisputed queen of the Seventies disco boom" who reached the status of "one of the world's leading female singers." In 2013, Summer was posthumously inducted into the Rock and Roll Hall of Fame. In December 2016, Billboard ranked her sixth on its list of the "Greatest of All Time Top Dance Club Artists."

**Summer's "I FEEL LOVE" Became a Global Smash Hit and One of Popular Music's Most Innovative and Influential Songs**

24. As part of her early recording career, Summer worked with her music partners Moroder and Bellotte on a concept album called "I Remember Yesterday," which was designed to chronicle the evolution of popular music through the decades. One side of the album evoked songs from the 1940's, 1950's, and 1960's, with the album's flip side representing a more modern disco sound. The album's closing track "I FEEL LOVE," co-written by Summer, Moroder and Bellotte, was intended to introduce listeners to the future.

25. Combining the use of a Moog synthesizer and Summer's simmering, evocative vocals, "I FEEL LOVE" was and remains an innovative achievement—a futuristic breakthrough record that changed dance music forever and continues to have a major impact on music today. With its unique modulations and pulses, "I FEEL LOVE" was recognized as the first song to combine repetitive synthesizer loops with a continuous four-on-the-floor bass drum and an off-beat hi-hat, which became a main feature of electronic dance music in the years to come.

26. Released in early July 1977, "I FEEL LOVE" was a global smash, reaching No. 1 in several countries (including Australia, Austria, Belgium, the Netherlands and the United Kingdom, where it remained the top song for an entire month), and reaching number 6 on the U.S. Billboard Hot 100 chart. Later,

1  versions of "I FEEL LOVE" have appeared on a number of greatest hits packages
2  and other compilations, including "Endless Summer: Donna Summer's Greatest
3  Hits" in 1994 and "The Journey: The Very Best of Donna Summer" in 2003.

4  27. "I FEEL LOVE," and its hypnotic, precision sound, has influenced
5  artists from David Bowie to Blondie. In 1996, Mixmag named "I FEEL LOVE"
6  the 12th-greatest dance single, describing it as the "the first electronic disco
7  masterpiece." In 2006, Slant magazine named it the greatest dance song, noting
8  that "it didn't just suggest the future, it was the future" and that "Summer's breathy
9  vocals still dwelled in the stratosphere of her own manufactured sensation."
10 Billboard rated "I FEEL LOVE" as one of the top 35 disco songs, while Rolling
11 Stone listed it as one of 40 songs "that changed the world." In 2011, the Library of
12 Congress added "I FEEL LOVE" to the National Recording Registry as a
13 "culturally, historically, or aesthetically important" work.

14 28. With its worldwide commercial and critical success, "I FEEL LOVE"
15 is instantly recognizable as one of Summer's (and dance music's) greatest hits.
16 Summer's estate has been careful to protect the legacy and value of the song,
17 granting licensing rights only in appropriate circumstances, including the nature
18 and purpose of the use as well as the requesting party.

### Registration of "I FEEL LOVE" Musical Composition
### with the U.S. Copyright Office

21 29. The musical composition "I FEEL LOVE," co-authored by Summer,
22 Moroder, and Bellotte, was duly registered with the U.S. Copyright Office,
23 evidenced by Registration No. EU0000791947 (issued June 1, 1997), and renewed
24 pursuant to Registration No. RE0000979499 (issued January 3, 2005).

25 30. In 1995, Donna Summer d/b/a Sweet Summer Night Music acquired
26 33.34% ownership of the copyright in the musical composition "I FEEL LOVE,"
27 effective as of July 1, 1992, which assignment was recorded with the U.S.
28 Copyright Office as Document No. V3507865. Summer acquired her rights to "I

1   FEEL LOVE" from Rick's Music, Inc., an entity affiliated with Warner Chappell
2   Music ("Warner Chappell"), which administers publishing rights on behalf of
3   Moroder and Bellotte.
4       31.    After Summer passed away in 2012, her ownership interest in her
5   copyrights, including her 33.34% co-ownership rights in "I FEEL LOVE," were
6   transferred to Plaintiff Bruce Sudano, as Executor of the Summer Estate.

**Plaintiff's Outright Denial of Defendants' Request to Use the "I FEEL LOVE" Composition**

    32.    On or around January 25, 2024, Alien Music (on behalf of Defendants) reached out to the Summer Estate to confirm its control and respective ownership of the composition. The estate's publishing administrator confirmed the Summer Estate owns 33.34% of the "I FEEL LOVE" composition, with Warner Chappell Music ("Warner Chappell") having rights to the remaining 66.6% on behalf of Summer's acclaimed music partners, Morodor and Bellotte.

    33.    On or around January 31, 2024, Alien Music submitted a clearance request to use excerpts from "I FEEL LOVE" in "a new song by Yeezy recording artist Kanye West." In its request, Alien Music acknowledged West and Defendants had used and sampl[ed] vocal elements" from "I FEEL LOVE." Alien asked for expedited review and advised that West and Co-Defendants were looking to "release [their song] on 2/9," indicating Defendants had already completed and readied their song for release without obtaining permission or even notifying the Summer Estate of their use.

    34.    In considering Defendants' request, the Summer Estate not only considered the immense commercial value of the "I FEEL LOVE" composition, but also the potential degradation to Summer's legacy. West is known as a controversial public figure whose conduct has led numerous brands and business partners to disassociate from him.

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

RUSS, AUGUST & KABAT

35. As one of the most requested copyrights for exploitation in recordings and audio-visual content, and by famous brands in the United States, Canada, and worldwide, the Summer Estate sought to protect the valuable intellectual property of "I FEEL LOVE" from any public association with the negative publicity surrounding West.

36. Accordingly, on or around February 3, 2024, the Summer Estate unambiguously denied Defendants' clearance request. The estate wrote to Defendants' representative that this denial meant an "absolute prohibition against any licensee (or other recording artist) covering I FEEL LOVE from using a Donna Summer 'soundalike', or using the original Donna Summer recording…" This unequivocal denial was communicated not only in writing, but also twice verbally over the phone. Defendants ignored the Summer Estate's denial.

37. The following week, the Summer Estate learned that after being denied clearance to use the composition, Defendants' representatives then approached Summer's record label, Universal Music Enterprises, to request clearance of the "I FEEL LOVE" master recording, which was also denied.

### West and Co-Defendant's Willful Copyright Infringement and Exploitation of "I FEEL LOVE"

38. On or around February 10, 2024, Summer's estate was shocked to learn that West and Ty Dolla $ign's joint album, "Vultures 1," had been released through West's record label with the inclusion of the infringing song "GOOD (DON'T DIE),"[1] despite Defendants requesting and being expressly refused permission to use "I FEEL LOVE" more than once.

39. In the face of these repeated denials, West and Co-Defendants attempted to get around this roadblock by instead making an unauthorized interpolation. West and his Co-Defendants used the song's iconic melody as the hook for their infringing song and essentially re-recorded almost verbatim key,

---

[1] Defendants' song "GOOD (DON'T DIE)" was originally named "So Good."

instantly recognizable portions of "I FEEL LOVE" using a singer soundalike to Summer, with slight changes to the lyrics (also done without permission). Although Defendants' insubstantial changes certainly do not insulate them from their willful copyright infringement of "I FEEL LOVE," it is important that courts protect artists against theft by even less obvious encroachments on their valuable creative works.

40. When listening to both songs, any average listener can immediately hear the distinctive similar melody and compositional elements present in both songs, which sound so identical that it appears Defendants may have gone so far as sampling the original master recording of Summer. Indeed, when the infringing song "GOOD (DON'T DIE)" was first released, music fans, critics, and music publications immediately recognized and/or believed the song had used, sampled, and/or infringed on "I FEEL LOVE."

41. At the request of the Summer Estate and the co-owners of "I FEEL LOVE," legitimate streaming platforms, distributors, and retailers, including Spotify and Apple Music, immediately removed the obviously infringing recording from their respective services and platforms.

42. By the time Spotify removed the infringing song "GOOD (DON'T DIE)" from its music streaming platform on February 14, 2024, the song had garnered over 8,000,000 streams in just four days, contributing to West overtaking the number 1 spot on Spotify's list of most streamed artists. The next day, Apple followed suit and pulled Defendants' infringing song from the Apple Music streaming platform and iTunes, but not before the song was streamed and/or downloaded millions of times. Multiple versions of the infringing song are still accessible on YouTube, and before West's official YouTube release was taken down, the infringing song had over 500,000 views and counting.

43. West and Ty Dolla $ign have also publicly performed the infringing song in recorded live concerts and "listening parties." Clips of their recorded

performances appear on YouTube and other outlets, having amassed over 900,000 views and counting on YouTube alone. The versions performed live by West and Ty Dolla $ign, which were captured and uploaded to YouTube, contained an actual recorded sample of the "I FEEL LOVE" master recording.

44. As of February 16, 2024, "Vulture 1" remains the top album streamed on Spotify both globally and in the United States, and early indicators suggest massive distribution, the full scope of which Plaintiff is still working to ascertain.

## FIRST CAUSE OF ACTION
## (Copyright Infringement)
## (Against All Defendants)

45. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

46. Plaintiff owns 33.34% of the U.S. copyright in the musical composition "I FEEL LOVE," with Warner Chappell owning the remaining 66.66%.

47. Defendants' unauthorized reproduction, distribution, public performance, display, and creation of an interpolation of "I FEEL LOVE" infringes on Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §§ 101, et seq.

48. Defendants sought, and were unambiguously denied, permission to copy or interpolate any portion of "I FEEL LOVE" into "GOOD (DON'T DIE)" (the "Infringing Work").

49. The Infringing Work copies quantitatively and qualitatively the most distinct, important, recognizable, and significant portions of "I FEEL LOVE," and certainly, the Infringing Work could not exist without the stolen portions of "I FEEL LOVE."

50. From the date of the creation of the Infringing Work, Defendants have infringed on Plaintiff's copyright interest in "I FEEL LOVE" including: (a) by

1  substantially copying and publicly performing, or authorizing the copying and
2  public performances of "I FEEL LOVE" at live concerts, personal appearances,
3  and on film, video, television, internet, and otherwise; (b) by authorizing the
4  reproduction, distribution, and sale of the records, digital downloads, and
5  streaming through the execution of licenses, and/or actually selling, manufacturing,
6  and/or distributing "I FEEL LOVE" through various sources and outlets; (c) by
7  substantially copying and the related marketing and promotion of the sale of the
8  records, videos, downloads, streams, tickets to concerts and other performances,
9  and other merchandise; and (d) by participating in and furthering the
10 aforementioned infringing acts, and/or sharing in the proceeds therefrom, all
11 through substantial use of "I FEEL LOVE" in and part of the Infringing Work and
12 the album, "Vultures 1," packaged in a variety of configurations and digital
13 downloads, streams, mixes, and versions, and performed in a variety of ways
14 including internet, radio, concerts, personal appearances, film, television,
15 downloads, streams, and otherwise.

16    51.    At all relevant times, Defendants' conduct has been and continues to
17 be knowing, willful, and with complete disregard of Plaintiff's rights. With
18 knowledge of the infringement, Defendants have (in addition to their direct
19 infringement) induced, caused, or materially contributed to, the infringing conduct
20 of others, such that they should be found to be contributorily liable. Defendants
21 also had the right and ability to control other infringers and have received a direct
22 financial benefit from that infringement, such that Defendants are also vicariously
23 liable for copyright infringement.

24    52.    Defendants' infringement continues as the album, "Vultures 1," on
25 which the Infringing Work appears, continues to be sold and/or to the extent the
26 Infringing Work continues to be licensed for sale, downloads, streams, and/or
27 ringtones, and other exploitations by Defendants and/or their agents.
28 ///

53. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual damages, including lost profits, lost opportunities, and loss of goodwill.

54. Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to actual damages, including disgorgement of Defendants' profits attributable to the infringement, as will be proven at trial.

55. In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to the maximum statutory damages of $150,000 per willful infringement.

56. Pursuant to 17 U.S.C. § 505, Plaintiff is also entitled to their costs, including reasonable attorneys' fees and costs.

57. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiff has no adequate remedy at law, and pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work.

58. Pursuant to 17 U.S.C. § 503, Plaintiff is further entitled to the remedy of impoundment and/or disposition of all infringing articles, including but not limited to: (i) all copies or phonorecords made or used in violation of the "I FEEL LOVE" copyright, and (ii) all masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against Defendants and for the following relief:

A. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, such as lost profits, lost opportunities, loss of goodwill;

B. Disgorgement of Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b);

C. In the alternative, statutory damages for Defendants' willful copyright infringement in the amount of $150,000 for each act of infringement pursuant to 17 U.S.C. § 504(c);

D. An award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 and under any other applicable law;

E. For pre-judgment and post-judgment interest according to law, as applicable;

F. A preliminary and permanent injunction prohibiting Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of Plaintiff's rights protected under the Copyright Act;

G. Impoundment and/or disposition of all infringing articles, including but not limited to: (i) all copies or phonorecords made or used in violation of the "I FEEL LOVE" copyright, and (ii) all masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced, and;

H. For such other and further relief as this Court may deem just and proper.

Dated: February 27, 2024                    RUSS, AUGUST & KABAT

By: _____
Stanton L. Stein
Bennett A. Bigman
Erica S. Kim
Attorneys for PLAINTIFF
Bruce Sudano, in his capacity as Executor of the Estate of Donna Summer Sudano d/b/a Sweet Summer Night Music

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Dated: February 27, 2024                    RUSS, AUGUST & KABAT

By: _____
Stanton L. Stein
Bennett A. Bigman
Erica S. Kim
Attorneys for PLAINTIFF
Bruce Sudano, in his capacity as Executor of the Estate of Donna Summer Sudano d/b/a Sweet Summer Night Music